IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| FRANK D. POWELL, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>COMMISSIONER OF )<br>SOCIAL SECURITY, )<br>Defendant. ) | Civil Action<br>No. 11-04009-CV-S-JCE-SSA |

## ORDER

This case involves the appeal of a final decision of the Secretary denying plaintiff's application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401 et seq. Pursuant to 42 U.S.C. § 405(g), this Court may review the final decisions of the Secretary. Pending before the Court at this time are plaintiff's brief, and defendant's reply brief in support of the administrative decision. For the reasons stated herein, it will be ordered that the decision of the Administrative Law Judge ["ALJ"] be affirmed.

Standard of Review

Judicial review of disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Maresh v. Barnhart, 438 F.3d 897, 898 (8th Cir. 2006). Substantial evidence "is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000). The Court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010). However, re-weighing the

evidence is not permitted. Flynn v. Chater, 107 F.3d 617, 620 (8th Cir. 1997). Therefore, even if plaintiff's impairments support a claim for benefits, the Court must affirm if there is substantial evidence to support the ALJ's conclusion to the contrary. See id. This Court cannot reverse the Commissioner's decision "merely because substantial evidence exists in the record that would have supported a contrary outcome." Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1). Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. Id. A disabling impairment is one which precludes engaging "in any substantial gainful activity [for at least twelve months] by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A finding of "not disabled" will be made if a claimant does not "have any impairment or combination of impairments which significantly limit [the claimant's] physical or mental ability to do basic work activities. . . ." 20 C.F.R. § 404.1520.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well-settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

Discussion

Plaintiff was 49 years old at the time of his alleged onset date, May 26, 2005. The hearing before the ALJ was held on September 25, 2008. Plaintiff has a high school education and additional training in broadcast journalism. He has past relevant work in journalism for over twenty years. Plaintiff claims disability based on diabetes, obesity, and an addictive personality disorder.

At the hearing before the ALJ, plaintiff testified he attempts to follow a diabetic diet, but is not always successful. He is now insulin dependent, and weighs about 355 pounds. He testified that he was not sure if he takes any pain medication because his wife administers the five or six pills that he takes each day. Plaintiff also testified that he has an addictive personality disorder. Specifically, he is addicted to food, which affects his diabetes, and he is addicted to pornography. He was diagnosed with this disorder about seven years ago, when he started seeing a psychologist. It was plaintiff's testimony that he was working as a news director at a radio station, where he had been working for five years, and lost his job because he was looking at pornography while at work. He tried to return to work, but had the same problem. He was terminated again. He has a computer at home, and his wife allows him to be on it a few hours a day. He hasn't sought any other employment because he doesn't know what he could do. He was problems with his feet because of the diabetes. Plaintiff testified that he has neuropathy in his feet, and this causes difficulty driving because he can't feel the pedals. He and his wife have limited his driving after he got his foot caught between the brake and the accelerator. It was his testimony that he enjoyed the news work, but he doesn't think he could do the standing the job required, even if the could refrain from the computer. He has some problems walking, which causes him to shuffle. He also has some ulcerated areas on his feet and legs. He can walk about

half a block and stand for about five minutes. He does mow the yard on a riding mower. He doesn't think he would have problems lifting. Plaintiff testified that he can sit for half an hour if he had room to move his legs. During the day, he moves about the house, getting in and out of his chair. Reading is his only hobby, and he does not go to church or belong to any groups. He has no pets, and about the only thing he does is occasionally go the movies.

Plaintiff's wife also testified. She had been married to plaintiff for about eight years at the time of the hearing. She is with her husband all day, as she does not work outside of the home. She has to get him up if he's not up by 10:30. He used to sleep until noon, but has been more alert during the day now that he has gone from pills to insulin for his diabetes. She testified that her husband gets on the computer about 11 or so, and gets off at 5:00. He checks on his sports sites and then looks at pornographic sites. She testified that he does not go back on the computer in the evening, which is an agreement they have worked out with the psychologist. Once he got fired from his job, his addiction to pornography on the computer has gotten worse. He also has some other obsessive tendencies, such as food he eats and knocking on wood. She confirmed that he can't drive very much, and doesn't go out much. She also confirmed that he has problems staying on a healthy diet.

The ALJ found that plaintiff met the insured status through December 31, 2010. It was his finding that plaintiff has the severe impairments of diabetes and obesity. He also found that plaintiff had non-severe impairments including obsessive compulsive disorder, anxiety and mood disorders, and addictions to food and pornography. He concluded that plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. The ALJ found that plaintiff could not perform his past relevant work "without the temptation to view pornographic websites." [Tr. 17]. He found that plaintiff had the Residual Functional Capacity

["RFC"] to perform unskilled work at the light exertional level, but cannot use a computer at work that has Internet access. In doing so, the ALJ relied on the Medical Vocational Guidelines ["GRIDS"] to determine whether plaintiff was disabled. It was his finding that plaintiff was only partially credible. Accordingly, the ALJ found that plaintiff was not under a disability as defined by the Act.

Plaintiff contends that the ALJ erred in failing to obtain evidence from a vocational expert; failed to find that his obsessive compulsive disorder, anxiety disorder, and mood disorders were severe impairments, and failed to consider the effect of any non-severe impairment; and erred in his RFC finding.

After a full review of the record and the ALJ's decision, the Court finds that there is substantial evidence in the record as a whole to support the decision of the ALJ. Plaintiff's medical records indicate that he is "massive[ly] obese," and that he has poor compliance with following a diabetic diet. [Tr. 227]. According to his treating physician, Dr. Allcorn, he is "his own worst enemy." [Tr. 225]. When he was advised that it was necessary to lose weight for his long-term health, he "smiled and laughed and said he would think about it . . . ." [Tr. 229]. It was also noted by his physician that he found excuses not to exercise, and that he admitted that his blood sugar levels were high because of his diet. The ALJ observed that plaintiff's medical records did not document recurrent diabetic ketoacidosis or any history of diabetic coma. While there is medical evidence that plaintiff suffered from neuropathy and problems with lesions on his extremities, it is clear that he displayed indifference to the advice of his physician. Additionally, based on his own testimony, he was able to engage in some daily activities such as mowing the lawn, going out to the movies or shopping on occasion, and spending hours a day on the computer, viewing and downloading pornography. Based on the record as a whole, there is

substantial evidence to support the ALJ's decision to find that, despite his diabetic condition, he could perform light work.

According to the records from a psychologist, Dr. Kitto, plaintiff sought counseling to deal with his addictive personality issues, and to address his diabetic condition. The treatment notes are replete with advice from his doctor regarding improving his behavior, addressing his eating issues, and coping with his addiction to pornography. It appears that plaintiff made little progress on any of these issues.

Although plaintiff asserts that the ALJ erred in not finding his alleged mental disorders to be severe impairments, a review of the record indicates that the ALJ fully considered the addiction problems and mood disorders in rendering his decision. He noted that while plaintiff sought counseling from Dr. Kitto dating back as far as 2000, he also had not seen him from 2001 until 2005. He advised the doctor in 2006 that he was running for county commissioner, which the doctor thought was a good idea. He did not take prescription medication even though it greatly improved how he felt, according to his wife. He was never hospitalized for his mental impairments, continued to go on pornographic websites daily, and was considered very treatment- resistant by both the physician and psychiatrist. While Dr. Kitto opined in a letter to Dr. Allcorn in 2007 that he had serious doubts that plaintiff could be gainfully employed, the ALJ noted that he had been treating plaintiff off and on since 2000, during which time plaintiff had been employed. The reason for his termination had been his viewing pornography on the Internet at work, and the ALJ took this limitation into account when assessing the RFC. The Court finds that, based on a full review of the record as a whole, while the ALJ did not find his mental impairments to be severe, he did consider the addiction to pornography in rendering his opinion that plaintiff could perform light work with Internet access/computer restrictions.

Regarding the ALJ's credibility determination, the ALJ found that plaintiff was not fully credible in part because of his daily activities that were inconsistent with his complaints of wholly disabling problems. The ALJ observed that plaintiff could mow the lawn, drive, go to movies, and stay on the computer most of the day. It was also his observation that despite plaintiff's addictive personality disorder, he had been able to work at substantial gainful activity in the past, which suggested that he would currently be able to work. Additionally, the ALJ observed that plaintiff had not tried to find another job. The ALJ found that the record was replete with evidence that plaintiff was non-compliant with dietary restrictions regarding his diabetes, which resulted in exacerbated problems from his diabetes, as well as obesity. Regardless of his complaints of a disabling personality disorder, the ALJ observed that plaintiff did not refill his medication for Effexor, which apparently helped him feel better. The Court finds that, based on the record as a whole, there is substantial evidence to support the ALJ's credibility determination.

Plaintiff also complains that the ALJ erred in his RFC finding. The Eighth Circuit has recognized that the RFC finding is a determination based upon all the record evidence, not just "medical" evidence. See Pearsall v. Massanari, 274 F.3d 1211, 1217-18 (8th Cir. 2001); Dykes v. Apfel, 223 F.3d 865, 866-67 (8th Cir.2000) (citing 20 C.F.R. § 404.1545; SSR 96-8p at pp. 8-9). The RFC formulation is a part of the medical portion of a disability adjudication. Although it is a medical question, the RFC findings are not based only on "medical" evidence, i.e., evidence from medical reports or sources. Rather, an ALJ has the duty, at step four, to formulate the RFC based on all the relevant, credible evidence of record. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (the Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others,

and an individual's own description of his limitations).

A review of the record indicates that the ALJ relied on the record as a whole in rendering his RFC decision, including medical evidence from various sources, and plaintiff's testimony. It is apparent that he thoroughly reviewed the record, and took into account the limitation regarding working around a computer with Internet access. The Commissioner's regulations state that it is the claimant's responsibility to provide medical evidence to show that he or she is disabled. See 20 C.F.R. §§ 404.1512, 416.912 (2008); Roth v. Shalala, 45 F.3d 279, 282 (8th Cir.1995). Plaintiff had the burden to come forward with relevant evidence of his restrictions. In this case, the Court finds that there is substantial evidence to support the ALJ's decision regarding plaintiff's RFC. The ALJ properly considered all the evidence of record in analyzing plaintiff's credibility, which the Court has previously found to be a proper credibility assessment. He then properly considered all of the evidence of plaintiff's restrictions found to be credible in determining his RFC. The record indicates that the ALJ noted and considered all of plaintiff's impairments, severe and non-severe, in assessing his RFC. The Court has carefully reviewed the record, and finds that there is substantial evidence in the record as a whole to support the ALJ's RFC finding.

In terms of relying on the Medical Vocational Guidelines, rather than the opinion of a vocational expert, the law is clear that where a claimant's non-exertional limitations do not prevent him from performing the full range of work as contemplated by the guidelines, vocational expert testimony is not required. The limitation regarding the computer did not significantly erode the occupational base for light work.

Based on the foregoing, the Court finds that there is substantial evidence in the record to support the ALJ's decision that plaintiff does not suffer from a disabling impairment and that he

has the residual functional capacity to perform unskilled light work with a restriction regarding working around computers with Internet access. Accordingly, the decision of the Secretary should be affirmed.

It is hereby

ORDERED that the decision of the Secretary should be, and it is hereby, affirmed.

          /s/ James C. England
          JAMES C. ENGLAND
          United States Magistrate Judge

Date:  7/11/12